R. P. RICHARDSON AND C. S. BURTON v. GREENSBORO WAREHOUSE AND STORAGE COMPANY.

(Filed 22 September, 1943.)

**1. Contracts § 1—**

There must be a substantial agreement of the parties upon the subject matter of the treaty to constitute a contract—a meeting of the minds.

**2. Contracts §§ 6, 8—**

Where a contract is in several writings and not in a single document, the Court will not be astute to detect immaterial differences which might defeat the contract, but will try to give each writing a reasonable interpretation according to the intention of the parties.

**3. Contracts § 8: Pleadings §§ 13½, 15—**

Where there is no ambiguity in the instruments upon which plaintiffs rely as a contract, they are subject to construction by the court, without the aid of a jury.

**4. Contracts §§ 4, 11a—**

Acceptance must be unqualified and in the terms of the offer, without material conditions not included or implied in the offer; otherwise, such purported acceptance constitutes a counter-proposal which the other party is not bound to accept.

**5. Contracts §§ 4, 11b—**

The acceptance of an offer to sell property, based upon the condition that plaintiffs' attorneys shall first pass upon the title, is not an unqualified acceptance of the offer and does not bind the defendant.

APPEAL by defendant from *Phillips, J.,* at May Civil Term, 1943, of ROCKINGHAM.    Reversed.

*Glidewell & Glidewell and Sapp & Sapp for plaintiffs, appellees.*
*Brooks, McLendon & Holderness and Douglas & Douglas for defendant, appellant.*

SEAWELL, J.    Plaintiffs brought suit in Rockingham County to recover damages for the breach of a contract to sell and convey to them certain property in the city of Greensboro, Guilford County, described in the complaint.    The case comes here upon demurrer to plaintiffs' pleading, to which two exhibits, "A" and "B," are attached and made a part thereof.    Exhibit "A," designated by plaintiffs as the offer, is in the nature of an option given to plaintiffs to purchase the property described in the complaint, which, with immaterial changes, was executed by defendant.    The complaint alleges certain parol modifications of this document with which our further discussion is not necessarily concerned.    Exhibit "B" is a communication from plaintiffs to W. F. Ross, agent for defendant, purporting to exercise the option and accept defendant's "offer."    The object of the action is recovery of damages for the breach of the contract to convey.    General allegations are made in the complaint relative to the existence and nature of the contract; but the contract itself is exhibited and identified, and the plaintiffs declare upon it.    It therefore defines their rights before this Court and would do so in the trial court if no demurrer had been made.    Hence, if it fails in law, there is no general allegation in the complaint that would avail the plaintiffs against the demurrer.

The defendant demurred to the complaint as not stating a cause of action for that an inspection of these writings reveals that plaintiffs have not at any time made an unqualified acceptance of defendant's offer, but, on the contrary, have attached to such purported acceptance material conditions which were not included or implied in the offer, but constitute counter-proposals which defendant was not bound to accept. In support of the demurrer, the defendant points out a number of these alleged discrepancies between the offer and the purported acceptance which it is contended indicate that the parties had reached no agreement. It is not necessary to consider them all.    In particular, our discussion does not include the effect of the allegation of the parol modification of the offer with respect to the terms of payment, since a conclusion as to that matter would not alter the decision.

There is no ambiguity in the instruments upon which plaintiffs rely as a contract and they are, therefore, subject to construction by the court

without the aid of a jury. *Drake v. Asheville,* 194 N. C., 6, 138 S. E., 343; *Morrison v. Parks,* 164 N. C., 197, 80 S. E., 85.

We think there is at least one provision in the last communication of the plaintiffs to the defendant—relied upon as an acceptance—upon which decision may safely rest. The following provision occurs in plaintiffs' purported acceptance:

"This offer is made subject to the approval of the title by our attorneys, Messrs. Smith, Wharton and Jordan, which we will obtain as soon as reasonably possible. . . . In the event, our attorneys should report to us that they are unable to approve the title to said property, then the check for $15,000.00 is to be returned to us by you, and all parties concerned shall thereupon be relieved of all further liability with respect to this transaction."

Concededly, and indeed upon inspection and comparison, there is no provision of this nature in defendant's offer. It is defended by the plaintiffs as immaterial and perhaps not at variance with the implied duty of the defendant to make a good title. The defendant insists that it is a matter of substance, involving a right which it had neither expressly nor impliedly proposed to surrender.

Substantial agreement of the parties upon the subject matter of the treaty is essential to the definition of a contract—there must be a meeting of the minds. *Croom v. Goldsboro Lumber Co.,* 182 N. C., 217, 108 S. E., 735; *Elks v. North State Life Ins. Co.,* 159 N. C., 619, 75 S. E., 808; *Roberta Manufacturing Co. v. Royal Exchange Assurance Co.,* 161 N. C., 88, 76 S. E., 865. Where the contract, as here, is in several writings—as offer and acceptance—and not contained in a single document which both parties have executed, the Court will not, of course, be astute to detect immaterial differences in the phrasing of offer and acceptance which might defeat the contract, but will try to give to each writing a reasonable interpretation under which substantial justice may be reached according to the intent of the parties. But it is the mutual intent that governs, and for this reason there must be substantial agreement between offer and acceptance in all material particulars in order that such mutuality may appear. There must be no lack of identity between offer and acceptance, *Standard Sand & Gravel Co. v. Casualty Co.,* 191 N. C., 313, 131 S. E., 754; and the parties must appear to have assented to the same thing in the same sense, *Trollinger v. Fleer,* 157 N. C., 81, 72 S. E., 795.

That is the crux of the case before us. The contract attempted between the parties, if consummated, was integral in its nature and, considering its object, its terms were not separable. They were all directed to the purpose of conveying the land. The plaintiffs in their acceptance of defendant's offer had no right to impose additional terms, or, at that

time, to introduce new and substantially different conditions into the treaty not found in the offer to which it is responsive. The effect of such an acceptance so conditioned is to make a new counter-proposal upon which the parties have not yet agreed, but which is open for acceptance or rejection. *Standard Sand & Gravel Co. v. Casualty Co., supra; Dodds v. St. Louis Union Trust Co.,* 205 N. C., 153, 170 S. E., 652; *Rucker v. Sanders,* 182 N. C., 607, 109 S. E., 857; *Morrison v. Parks, supra; Wilson v. Storey Lumber Co.,* 180 N. C., 271, 104 S. E., 531; *Cozart v. Herndon,* 114 N. C., 254, 19 S. E., 158; *Iselin v. United States,* 271 U. S., 136, 70 L. Ed., 872. The proposition is elementary, but particularly well expressed in *Wilson v. Storey Lumber Co., supra,* and *Cozart v. Herndon, supra,* to which attention is directed.

The counter-proposal of the plaintiffs that the title should be passed upon by attorneys of their own selection before it should be accepted and the property paid for is material and important. The land belonged to the defendant. It, not the plaintiffs, had the right to name the conditions on which it would part with the title. It is true that delivery of the thing sold is required of the defendant; and it is implied in a contract to convey land, unless differently agreed, that the seller must give a good title. But it is not implied in law or, as far as we know, required by any controlling custom, that attorneys of plaintiffs' selection should be designated to pass upon the title, and that their adjudication thereon should be final, and possibly have the effect of annulling the contract. In *Dickey v. Hurd et al.,* 33 Fed. (2d), 415, the plaintiff undertook to attach a similar provision to his acceptance, unqualified in other respects. The Court said: "This was not an unequivocal and unconditional acceptance of the offer. It was the introduction of a new term. If Mr. Hurd, by the terms of his offer, impliedly agreed to give a good merchantable title, one that a court of competent jurisdiction would determine to be merchantable, he did not impliedly agree to furnish a title 'the legality and merchantability' of which should meet the approval of Mr. Dickey's counsel, and that, if it did not meet their approval, then in that contingency Mr. Dickey should not be regarded as bound by his acceptance." Williston on Contracts, par. 77, and cases cited. The defendant, we think, unquestionably would have the right to participate in the selection of counsel to whom the title might be referred, or to have it left to the courts where, without any stipulation to the contrary, it otherwise would have gone in case of controversy, and there is no implication in defendant's offer that it intended to surrender that right.

We are of opinion that the letter of plaintiffs, regarded by them as an acceptance of defendant's offer, was deprived of that character by the introduction of a material condition affecting the transfer and acceptance of the title, not contemplated in the offer. It amounted to a

counter-proposal which defendant had the right to accept or reject as it saw fit, without incurring liability to the plaintiffs.

It can hardly be doubted that plaintiffs so regarded it, since they closed the communication as follows: "This offer is made subject to acceptance by your principal today." Indeed, the logical import, and doubtless the legal effect of this language is to give to the defendant the right to accept or reject plaintiffs' offer.

The demurrer should have been sustained. The judgment to the contrary is

Reversed.